Georgette E. Coolidge and Walter G. Coolidge v. J. Foster Rhodes and Margaret W. Rhodes.

1. Fraud—*When False Representations Constitute Fraud.*—To constitute fraud, false representations must relate to a material fact, and be made with a knowledge of their falsity, and for the purpose of inducing the other party to act thereon, and such other party must actually act to his injury in the reasonable belief that the representations are true.

2. Same—*When Statements are Merely Matters of Opinion, and Not Fact.*—Statements by the owner of shares of stock made to induce another to purchase, that the stock was good and valid, fully paid and non-assessable, and that it had been taken and paid for in cash at its face value, are, under the allegations of the bill in this case, matters of opinion only, and though false, do not constitute fraud.

**Bill for the Rescission of a Conveyance of Real Estate.**—Error to the Circuit Court of Cook County; the Hon. Murray F. Tuley, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed June 28, 1901.

**Statement.**—This is a bill for the rescission of the conveyance of real estate. The conveyance in question was made by appellants by deed dated September 30, 1885. The bill of complaint filed July 1, 1891, recites that September 13, 1885, defendant in error Rhodes sought to purchase, and after negotiations plaintiff in error Georgette E. Coolidge agreed to sell, the said lot or parcel of land for $7,800 cash; that Rhodes stated he owned stock in the Traders Safe and Trust Company, and offered to pay for the land in stock of said corporation; that he represented said stock to be good, valid, full paid, non-assessable, and paying twelve or fourteen per cent dividends; that he stated every dollar represented by said stock had been paid to said company in cash; that the dividends had been so large the company had increased its capital stock from $250,000 to $300,000, all of which original and increased stock had been paid for in cash; that relying on said representations and statements and believing them to be true, plaintiffs in error agreed to take $7,800 in the said stock of said company in payment of the purchase price for said premises; that accordingly

Rhodes delivered seventy-eight shares of said stock of the par value of $7,800, and thereupon received, September 30, 1885, a deed of the said premises duly executed. The bill asserts that said stock was not in fact fully paid as represented by Rhodes; that a large percentage, at least one-sixth thereof, was a fraudulent increase or over-issue, and that two-sixths of the balance had paid into the company but three dollars a share, and was and is liable to a call or assessment by the company of $97 a share to make it full paid stock. The bill describes in detail the methods by which it is alleged the increase in capital stock was effected and the manner of its distribution among the stockholders. It is averred that such increase was illegal and that the new certificates of stock issued to each stockholder included such illegal increase and were thereby rendered invalid to that extent; that each share of said stock issued to Rhodes and the stock by him delivered to plaintiff in error was and is tainted with and by the illegality of its issue, as Rhodes then knew, but of which plaintiff in error was ignorant when she delivered the deed of conveyance and took said seventy-eight shares of stock in payment of the consideration therefor, upon the faith of said Rhodes' representations, relying thereon and believing them to be true. It is stated that plaintiff in error learned for the first time " within the last three weeks " of the alleged fraudulent increase; that she has received in dividends upon said stock $838.50, which, with the stock certificates, she brings into court and offers to turn over to defendants in error. The bill prays for a reconveyance, or in lieu thereof for a money decree for the value of the said land.

A general demurrer to the bill was sustained and from the order of dismissal this writ of error is prosecuted.

COLLINS & FLETCHER, attorneys for plaintiff in error.

A. B. JENKS, attorney for defendants in error.

MR. JUSTICE FREEMAN delivered the opinion of the court. It is first contended by counsel for plaintiffs in error that

the increase of capital stock of the Traders Safe and Trust Company (stock of which to the extent of seventy-eight shares was delivered to plaintiffs in error as consideration for the conveyance of the land sought to be recovered) and the shares issued in pursuance of said increase, were illegal and void, for the alleged reason that it was accomplished by the votes of less than two-thirds of all the capital stock. It appears that $100,000 out of $250,000 of the shares was then held by the corporation as treasury stock, and the increase of capital was effected by the vote of two-thirds of the remaining stock. It is argued that the representation of Rhodes that the stock was good, valid and non-assessable was in this respect fraudulent. Numerous authorities are cited to sustain the contention that the procedure to increase the capital stock was ineffectual, and that no valid increase was accomplished. It is further urged that the representation was fraudulent because 1500 shares of the treasury stock were sold by the company to its stockholders or divided proportionately among them at the rate of $3 a share, and that even had the increase been regular, each of such shares would nevertheless be subject to an assessment of $97 a share.

We do not deem it necessary to consider whether there was or was not a valid increase of the capital stock of said corporation, nor whether the 1500 shares so divided among the stockholders was full paid or not. It is evident that these shares might have been full paid if they represented an actual increment in value added to the capital of the corporation from its earnings. The question to be determined is whether the bill states a case of fraudulent representation. It is claimed by defendant in error that at the most it shows only expressions of opinion upon what is properly a question of law, and even though it be considered that such opinions were unsound, their expression affords no ground of equitable interference.

We are compelled to agree with counsel for defendants in error that the facts averred in the bill fail to make out a case of fraudulent representations, entitling plaintiffs in

error to recover. There was no concealment of anything. It was open to the purchaser in person or by attorney to investigate the stock in question so far as appears, to examine into the organization of the corporation and ascertain how the capital which the stock purported to represent was paid in; and if not satisfied with its regularity, validity or non-assessability, to refuse to accept it. Rhodes might have known the facts which it is now argued render the stock invalid and yet have honestly reached the conclusion and entertained the opinion he expressed. In relying upon such representations, plaintiffs in error were confiding, not alone in Rhodes' honesty, but in the soundness of his opinion upon a question of law. Counsel themselves do not agree as to the legal status of the stock in controversy, assuming the facts to be as the bill states them. No representations were made concerning the manner in which the capital stock was increased, or as to how it was paid for in cash, whether such cash was actually paid in by the stockholders or paid out of surplus earnings of the company. The representations were the statement of a conclusion, not the facts on which the conclusion was based. It is not charged in the bill that Rhodes knew or believed the stock to be illegally issued and therefore invalid as a matter of law, and that so believing he deceived plaintiffs in error willfully. Nor do the facts, as stated in the bill, necessarily imply that he knew or believed the alleged representations to be false. If he believed them to be true they were not fraudulent. In order to justify recovery it must appear that the representations were in regard to a material fact, that they were false, and that they were not, on reasonable grounds, believed by the maker to be true. It must further appear that they were made with intent they should be acted upon, that they were acted upon to the damage of the party imposed upon, and that the latter was ignorant of their falsity and reasonably believed the representations to be true. Crocker v. Manley, 164 Ill. 282 (291).

The alleged misrepresentations said to be material are (1) that Rhodes was the owner of the stock transferred,

Coolidge v. Rhodes.

(2) that it was good and valid, (3) fully paid and non-assessable, and (4) that it had been taken and paid for in cash at its face value. As already indicated we regard these as expressions of a conclusion or opinion, and not fraudulent representations entitling plaintiffs in error to recover. But it is urged by the latter's counsel that the last of the said representations can not be regarded in any light as a mere expression of opinion, viz., " that every dollar of the stock of said company had been paid to the company in cash." The bill avers—and for the present investigation the demurrer admits the correctness of such averments of the bill as are well pleaded—that the capital stock of the corporation was originally $350,000, of which $150,000 only had been subscribed and paid for. One thousand shares had been subscribed for by one Barnes, but with the understanding, it is claimed, that it should be considered as treasury stock. This stock, together with the 500 shares representing the increase, was, by action of the directors, sold or distributed among the holders of the original stock apparently as a stock dividend, in proportion to their respective holdings, each stockholder surrendering his original certificates and receiving new certificates for double the number of his original shares. The issue of stock therefore amounted to $300,000, for which there had actually been paid into the treasury of the company by the stockholders themselves a total of $154,500 only. It is alleged that Rhodes was the holder of 255 original shares, and after the new issue he held 510 shares, paying for the additional 255 shares only three dollars a share. It was a portion of this stock which was transferred to plaintiffs in error in payment for her land. As Rhodes was one of the directors and as such participated and was a mover in the action so taken, it is urged that it was impossible he could have been ignorant of the fact that such stock had not been fully paid for in cash when he falsely alleged that it had been. It is of course true that Rhodes should have known at least that the said stock had not been fully paid for in cash by the respective

stockholders. But he may have believed and may have had reason to believe for aught the bill shows, that it had been so paid for out of accumulated cash earnings, the existence of which is implied by what the bill states. Rhodes is said to have represented that the increase of capital was because of the large earnings of the corporation, and it is not denied, so far as we have discovered, that this representation was true.

We have carefully examined the abstract to ascertain wherein plaintiffs in error claim in their bill to have been damaged in consequence of the representations complained of. As before stated, to justify recovery for false representations it must appear that they were acted upon to the damage of the party claiming to have been imposed upon. There are no averments showing wherein plaintiffs in error have been thus damaged. It is charged that all the stock in controversy is invalid and worthless, by reason of the manner of its issue. But this is a conclusion, not a statement of fact. It appears that dividends on said stock to the extent of over eight hundred dollars had been paid when the bill was filed. It could not be wholly worthless according to the bill itself. Whether it had or has any market value, what was or is the condition of the business of the corporation, and the amount of assets or liabilities, we are not advised by the bill. The stock has not been assessed at all. For all that is shown it may have had then and may have now, a market value making it adequate consideration for the land for which it was exchanged.

The bill was filed five years and nine months after the transaction which it seeks to avoid, and it states that plaintiffs in error, who have held the stock in controversy all the intervening years and received dividends thereon, did not ascertain the facts until within three weeks before the suit was commenced. It is urged by counsel for defendants in error that said plaintiffs are barred from relief in equity by laches. In view of what has been said, however, we do not deem it necessary to extend the discussion. For the reasons indicated the judgment of the Circuit Court must be affirmed.